UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RAKEEM HARRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 23-1213-JEH-JES ) |
| CHRIS RENKEN, *et al.*, | ) ) |
| Defendants. | ) ) |

# ORDER AND OPINION

Plaintiff, a non-prisoner, has filed a complaint under 42 U.S.C. § 1983 and a petition to proceed in forma pauperis ("IFP") (Doc. 3). For the reasons set forth below, Plaintiff's Motion for Leave to Proceed IFP (Doc. 3) is GRANTED.

### BACKGROUND

The IFP statute, 28 U.S.C. §1915(a)(1), is designed to ensure indigent litigants meaningful access to the federal courts. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). In cases asserted under 28 U.S.C. § 1915, district courts must "screen the case before granting the privilege to proceed without prepayment of fees." *United States v. Durham*, 922 F.3d 845, 846 (7th Cir. 2019) (citing 28 U.S.C. § 1915(e)(2)). The Court is to review the sufficiency of the complaint and deny IFP status if: (1) the allegation of poverty is untrue; (2) the action is frivolous; (3) the action fails to state a claim; or (4) the action seeks monetary relief against an immune defendant. 28 U.S.C. §1915(e)(2).

The Court has reviewed the IFP petition where Plaintiff attests under penalty of perjury that he is "technically homeless," sleeps at "various locations," and receives SNAP food stamp benefits. (Doc. 3 at 1). Although Plaintiff has $543.00 in a checking account, he attests to having no source of income and no driver's license with which to earn income. The Court finds that

1

Plaintiff has established indigency for purposes of IFP status and will now consider the sufficiency of the complaint.

When evaluating whether a pro se plaintiff has stated a claim under § 1915(e)(2)(B), courts use the same standards that apply to Federal Rule of Civil Procedure 12(b)(6) motions. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013). Therefore, the court will take as true "all well-pleaded allegations of the complaint" and view them "in the light most favorable to the plaintiff." *Id.* (citing *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). The complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Plaintiff's complaint alleges violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights as well as state law claims of unlawful restraint, false imprisonment, malicious prosecution, assault, and battery. Plaintiff names McLean County officers Chris Renken, Nathan Haynes, Dakota Demoss, Jonathan Albee, Winston Gresham, and David Fritts in their official and individual capacities, and asserts various *Monell*[1] claims against the McLean County Sheriff's Office. That is, the officers acted pursuant to an unconstitutional policy or practice promulgated or allowed by the Sheriff's Office. Plaintiff pleads unrelated claims arising from incidents on June 3, 2021, June 23, 2021, and May 16, 2022.

---

[1] *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) (finding municipality liability where a constitutional injury results from the municipality's policy, practice, or custom).

### DISCUSSION

**THE JUNE 3, 2021 INCIDENT**

Plaintiff asserts violations of his Sixth Amendment and due process rights on June 3, 2021, by Defendant Officers Demoss, Haynes, and Albee when they prevented him bringing "an electronic device," not otherwise identified, into the courthouse. He also asserts under *Monell*, that Defendants acted pursuant to an unconstitutional policy of the Sheriff's Office. Plaintiff alleges that his Sixth Amendment right to counsel, in this case, the right to represent himself, was infringed when he was not allowed to bring the device into the courthouse, something only attorneys and staff are allowed to do. Plaintiff does not claim that he could not file paper copies, only that he could not use a portable electronic device to file. He asserts, in part, "[w]ithout their Portable Electronic Devices, court users are without a way to communicate with their family, employers, or friends while in the courthouses and, therefore, are unable to seek assistance, coordinate rides, or inform their employers of being in court." (Doc. 1 at 15). Plaintiff claims that there should be storage for portable electronic devices at the security entrance but confusingly claims that he intended to use the device while in the courthouse. He does not explain how he would be able to use this device if had had to check it at the entrance as he recommends.

This claim does not state a Sixth Amendment violation as Plaintiff cannot assert a "right" to counsel under § 1983. *See Curet v. Bloom*, No. 20-412, 2022 WL 489526, at *1 (E.D. Wis. Feb. 17, 2022) ("a civil litigant has 'neither a constitutional nor statutory right'" to counsel). The claim fails even if generously construed as a lack of access to the courts. Plaintiff has the opportunity to mail filings to the Clerk or to appear in person with paper copies. In fact, on the day in question, Plaintiff was in the courthouse and presumably could have filed paper copies. The lack of e-filing capability does not result in Plaintiff being unable to meaningfully represent

himself or to meaningfully access the courts. It results only in Plaintiff being unable to file in his preferred manner. *See Hobbs v. Shesky*, No. 22-680, 2023 WL 2391113, at *2 (E.D. Wis. Mar. 7, 2023) (finding federal court rule which did not allow pro se parties to e-file did not violate the constitution). As Plaintiff cannot state a claim for relief under these facts, the June 3, 2021 claims are dismissed with prejudice as frivolous. *See Barlow v. Wolfson*, No. 22-1152, 2022 WL 3443657, at *1 (C.D. Ill. June 29, 2022), *appeal dismissed,* No. 22-2441, 2022 WL 18673313 (7th Cir. Sept. 30, 2022) ("The Court is not required 'to accept without question the truth of the plaintiff's allegations' when determining whether the complaint is frivolous . . . the Court can 'pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'") (internal citation omitted); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (affirming the district court's dismissal of a non-prisoner's claim as frivolous). "To sue in bad faith means merely to sue on the basis of a frivolous claim, which is to say a claim that no reasonable person could suppose to have any merit."

### THE JUNE 23, 2021 INCIDENT

Plaintiff pleads that on June 23, 2021, Officer Demoss, aided by Officers Albee and Gresham, stopped his vehicle because it appeared that he did not have a "legitimate license plate." Based on this, Plaintiff asserts *Monell*, First, and Fourth Amendment claims, failure to intervene, and malicious prosecution. Plaintiff claims that there was no probable cause for the stop even though 625 ILCS 5/3-402 of the Illinois motor vehicle code requires with limited exceptions, none of which Plaintiff claims, that "[e]very motor vehicle, trailer, semitrailer and pole trailer when driven or moved upon a highway shall be subject to the registration and certificate of title provisions of this Chapter . . ." Plaintiff asserts that this statute is inapplicable as the automobile he was driving was not a motor vehicle under 18 U.S. Code § 31 (a)(6), a

federal criminal statute relating to damage to commercial aircraft and commercial motor vehicles. For purposes of that statute "motor vehicle" is defined as "every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, passengers and property, or property or cargo."

Plaintiff seeks to juxtapose the federal criminal statute's definition of a motor vehicle with the Illinois statute to arrive at the conclusion that the vehicle he was driving was not a motor vehicle subject to the Illinois statute. Plaintiff, in fact, pleads, "[s]ince Harris was not in a motor vehicle, he was not required to have Secretary of State registration license plates." (Doc. 1 at 11). This conclusion is nonsense and Plaintiff pleads nothing to support that the 18 U.S. Code § 31 (a)(6), definition of motor vehicle is to be read into the Illinois motor vehicle code.

Plaintiff also alleges a malicious prosecution claim arising from this incident. Plaintiff was cited for the offense which was eventually terminated in his favor. He pleads that Officer Demoss wrongly "initiated criminal proceedings on Harris due to his private automobile not having Secretary of State registered plates" (Doc. 1 at 12). The Court has already found frivolous Plaintiff's claim that there was no probable cause for the stop, and he cannot assert malicious prosecution without a credible challenge to probable cause. *See Gallagher v. Gentile*, No.18-6413, 2021 WL 963766, at *4 (N.D. Ill. Mar. 15, 2021) ("probable cause provides a complete defense to an Illinois malicious prosecution claim.") (internal citation omitted); *Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018) ("[t]o state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause...").

Plaintiff also asserts a *Monell* claim arising from this incident. That is, officers are impermissibly trained "to treat every car on the road as a 'Motor Vehicle' . . . . [and] to initiate traffic stops and write citations on automobiles that do not have Secretary of State registered plates." (Doc. 1 at 10-11). This fails to state a claim for the reasons previously given.

Plaintiff also claims that his First Amendment rights to the free exercise of his religion were violated in this incident. Plaintiff pleads that at the time, he was on his way to worship and pray at an undisclosed location. He asserts that the stop by Defendant Demoss interrupted this religious exercise with the result that Demoss, Gresham, and Albee are liable for the infringement; and the Sheriff's Office liable under *Monell*. Plaintiff premises the Free Exercise claim on Defendants' alleged "demand for Harris to operate in a commercial capacity with Secretary of State registered license plates. In order to avoid seizure and punishment undermines the moral and religious duty to refrain from commercializing the worship ceremony in any way." (Doc. 1 at 13). The named Defendants, however, did not make such a demand, as this was made by the Illinois legislature in enacting the motor vehicle code.

To effectively plead a Free Exercise claim Plaintiff must allege that Defendant's actions substantially burdened his religious exercise. *See Schworck v. City of Madison*, No. 19-312, 2021 WL 1820779, at *13 (W.D. Wis. May 6, 2021), *aff'd as modified,* No. 21-2055, 2022 WL 832053 (7th Cir. Mar. 21, 2022) ("The Supreme Court has explained that a 'substantial burden' is something that 'seriously violates [one's] religious beliefs,' regardless of whether alternative means of religious exercise are available.") (citing *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015)). Here, the traffic stop apparently delayed Plaintiff's religious exercise, but the facts do not support that the stop violated his religious beliefs.

Still not done, Plaintiff alleges that Defendants Gresham and Albee failed to intervene during the unlawful stop by Demoss. As noted, Plaintiff has not successfully pled that the stop was unlawful. If there were no constitutional violation, Defendants Gresham and Albee had no obligation to intervene. The allegations regarding the June 23, 2021 stop are dismissed with prejudice in their entirety as frivolous.

**The May 16, 2022 Incident**

Plaintiff pleads that on May 16, 2022, he was at the Courthouse "to handle personal business." As he headed to the elevators, Defendant Officers Renken and Haynes approached and asked him why he was not responding to the name "Michael Anderson." Plaintiff informed the officers that he was not Michael Anderson and did not look like Michael Anderson. When Plaintiff entered the elevator, Defendants Renken and Haynes also entered, blocking the elevator doors. Defendant Renken claimed that Plaintiff was lying about his identity and threatened to arrest him for obstruction.

At some point, the two officers stepped back, and Plaintiff headed for the stairwell. Plaintiff claims that Defendants "rushed" and "cornered" him, requesting his ID. Plaintiff asked if he was suspected of committing a crime to which the officers replied "No." When Plaintiff refused to produce an ID, Defendant Renken told him he was free to go. However, as Plaintiff entered the stairwell, Defendant Renken grabbed his arm. Plaintiff wrestled his arm free, exited the stairwell, and headed toward a jail security officer, yelling for help. Renken showed Plaintiff a picture of Michael Anderson, stating "[S]o you [sic] telling us this does not look like you?" Plaintiff responded, "[Y]ou act as if we all look alike." At that point, Renken ordered Plaintiff to either proceed upstairs to the third floor where he was originally headed or leave the courthouse. Plaintiff refused to do either, and Defendant Renken yelled at him up close, spraying saliva and

7

threatening him with arrest if he did not leave. It appears that Plaintiff vacated the courthouse at this point.

Plaintiff has adequately pled Fourth Amendment and state law false imprisonment claims against Defendants Renken and Haynes for allegedly seizing him in the elevator and stairwell on May 23, 2023. Plaintiff also sufficiently pleads state law claims of assault and battery against Defendant Renken. Plaintiff's claim of "unlawful restraint" is part and parcel of the false imprisonment claim and not considered a separate tort. *See Gauger v. Hendle*, 954 N.E.2d 307, 327 (Ill. App. Ct. 2d Dist. 2011) ("False arrest or false imprisonment is the unlawful restraint of an individual's personal liberty. The elements of false arrest "are that the plaintiff was *restrained or arrested* by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff.") (emphasis in original) (internal citations omitted).

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to Proceed IFP (Doc. 3), is GRANTED. This case will proceed as to the allegations of the May 23, 2022 incident against Defendants Renken and Haynes only. The allegations of June 3, 2021, and June 23, 2021, are DISMISSED with prejudice as frivolous.

The Clerk is hereby directed to issue to Defendants Renken and Haynes the summonses attached to the complaint (Doc. 1-2 at 1- 4) and to dismiss the remaining Defendants. The Office of the U.S. Marshal is to serve the complaint, summons, and a copy of this Order on Defendants in accordance with the Federal Rules of Civil Procedure, without cost to Plaintiff. 28 U.S.C. § 1915(d).

Signed on this 3rd day of August 2023.

s/James E. Shadid  
James E. Shadid  
United States District Judge