IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

RAKEEM HARRIS,
    Plaintiff,

v.

RENKEN et al,
    Defendants.

Case No. 1:23-cv-01213-JEH-RLH

### Order

Now before the Court is the Defendants' Motion for Summary Judgment, (D. 36), and the Plaintiff's Motion for Summary Judgment, (D. 45).[1] For the reasons set forth, *infra*, the Defendants' Motion for Summary Judgment, (D. 36), is GRANTED, and the Plaintiff's Motion for Summary Judgment, (D. 45), is DENIED.

**I**

Plaintiff commenced this cause of action on June 1, 2023, alleging various civil rights violations arising under 42 U.S.C. § 1983. (D. 1 at ECF p. 4). On September 5, 2023, the Defendants filed a Motion to Dismiss. (D. 15). On December 28, 2023, the Court granted the Motion to Dismiss in part, leaving only the Plaintiff's Fourth Amendment cause of action. (D. 23). On February 7, 2025, the Defendants filed a Motion for Summary Judgment in accordance with this Court's scheduling order. (D. 36); *See* 01/30/2024 Text Order. Plaintiff filed a Response to the Motion for Summary Judgment on February 28, 2025, (D. 40), and the Defendants filed a Reply on March 17, 2025. (D. 43). On March 19, 2025, the Court struck Plaintiff's Motion for Summary Judgment, (D. 31), for failing to comply with Federal Rule of Civil Procedure 56(e) and Civil Local Rule 7.1(D)(1)(b). *See* 03/19/2025 Text Order. The Court granted the

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

Plaintiff twenty-one days to file a Motion for Summary Judgment that complied with the Federal Rules of Civil Procedure and the Local Rules. *Id.* Thereafter, Plaintiff filed his Motion for Summary Judgment on April 9, 2025, (D. 45), and the Defendants' Response was filed on April 30, 2025. (D. 46). The Plaintiff filed his Reply on May 14, 2025. (D. 47). The matter is now fully briefed, and the undisputed material facts are as follows.

## II

To state a cliché, this is a case of mistaken identity. Plaintiff Rakeem Harris ("Harris") is a black male and resident of McLean County, Illinois, and Defendants Chris Renken ("Renken") and Nathan Haynes ("Haynes") are deputy sheriffs with the McLean County Sheriff's Office that were assigned to court security on May 16, 2022. (D. 36 at ECF p. 2-3). As part of those duties, Renken and Haynes "were also responsible for serving civil process as directed",[2] and were to serve civil process on an individual named "Micheal Anderson" ("Anderson"). *Id.* In doing so, they relied on a "Jacket" containing a 1" by 1" black and white photograph of Anderson with his identifying information in order to effectuate service.[3] *Id.* "Renken and Haynes received information that Michael Anderson may be coming to the courthouse late in the day [on May 16, 2022] for an appointment with a probation officer for purposes of serving the civil process." *Id.* There is no genuine dispute that Anderson and Harris are both black males, of similar height, and appeared to have their hair either in braids or dreadlocks at the time in question. (D. 36-1 at ECF p. 10.). On May 16, 2022, Harris arrived at the McLean County Law and Justice Center, between 4:00 and 4:30 PM, to file an appeal "of a statutory suspension for a Driving Under the Influence of Alcohol case." *Id.* at ECF p. 4. "After entering the courthouse and passing through security, Harris was approached by Renken and Haynes while he was walking to the elevators

---

[2] The Defendant disputes this but does not cite to any particular facts showing there is a genuine dispute as to this issue. *See Horton v. Pobjecky,* 883 F.3d 941, 948 (7th Cir. 2018).
[3] The Defendant disputes this but does not cite to any particular facts showing there is a genuine dispute as to this issue. *See Horton v. Pobjecky,* 883 F.3d 941, 948 (7th Cir. 2018).

on the south side of the courthouse." *Id.* "In approaching Harris, Haynes and Renken called out for 'Michael Anderson' and Harris did not respond." *Id.* "When Harris did not respond, Haynes and Renken asked why he was not responding, to which Harris stated, 'because I am not Michael Anderson.'" *Id.* "Harris then proceeded to enter the elevator at which time the deputies followed and asked Harris to identify himself." *Id.* at ECF p. 5. At this point, Harris claims the deputies asked to see his identification and threatened him with arrest for obstruction. *Id.* Harris then left the elevator and entered the stairwell and claims that Renken "tugged on his arm causing him to leave the stairwell and return to the courthouse lobby" where he sought assistance from an individual at the security entrance. *Id.* Harris does not dispute that Renken only had his hand on his arm for one second and suffered no physical injury from the touch. *Id.*; *see also* (D. 40 at ECF p. 2). According to Harris, Renken then threatened him with arrest, telling him he either needed to leave or go upstairs to conduct his business, giving rise to a verbal exchange that occurred in the courthouse lobby in which Harris alleges Renken pointed a finger at him and that Renken's saliva flew on Harris' face. (D. 36 at ECF p. 6.) Ultimately, "Harris completed his business at the courthouse and left without issue." *Id.* at ECF p. 7. Moreover, it is undisputed that "[f]rom the time Harris went through security screening to the time he went upstairs to complete his business at the Circuit Clerk's office less than five (5) minutes elapsed." *Id.*

### III

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must

3

come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrate that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "The parties must support their assertions that a fact cannot be or is genuinely disputed by citing to 'particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . ..'" *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477 U.S. at 255 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 250. "The same standard applies when considering cross-motions for summary judgment." *City of Chi. v. Equte LLC*, 693 F. Supp. 3d 879, 889 (N.D. Ill. 2023) (citing *Int'l Bhd. of Elec. Workers, Loc. 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)). Therefore, when considering the Plaintiff's Motion for Summary Judgment, the Court views all the evidence in the light most favorable to Defendants, and when considering

Defendants' Motion for Summary Judgment, the Court views all the evidence in the light most favorable to the Plaintiff. *Id.*

### A

The only claim remaining in this case is that the Defendants violated Plaintiff's Fourth Amendment rights by effecting an unlawful seizure in violation of 42 U.S.C. § 1983. (D. 23 at ECF p. 9); (D. 1 at ECF p. 5-8). The Defendants argue that they did not violate the Fourth Amendment in their attempt to serve civil process at the courthouse. (D. 36 at ECF p. 9). For the reasons that follow, the Court agrees that no reasonable jury could find that Plaintiff's Fourth Amendment rights were violated.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures". U.S. Const. amend. IV. "This case concerns the "seizure" of a "person," which can take the form of "physical force" or a "show of authority" that "in some way restrain[s] the liberty" of the person." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "A seizure occurs when, considering all of the circumstances, a reasonable person would not feel free to leave, decline the officers' requests, or otherwise terminate the encounter." *United States v. Palomino-Chavez*, 761 F. App'x 637, 642 (7th Cir. 2019) (citing *Florida v. Bostick*, 501 U.S. 429, 436-39 (1991)). "If a reasonable person would feel free 'to disregard the police and go about his business,' no seizure has occurred." *United States v. Ahmad*, 21 F.4th 475, 479 (7th Cir. 2021) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). To succeed in establishing an unlawful seizure claim pursuant to § 1983, the plaintiff must establish: (1) that the government actor's conduct constituted a seizure; and (2) that the seizure was unreasonable. *See Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) (citing *Bielanski v. Cty of Kane*, 550 F.3d 632, 637 (7th Cir. 2008)). "'Determining whether a seizure has occurred is a highly fact-bound inquiry,' but a number of circumstances may be relevant, including: whether the encounter occurred in a public place or the police moved the person to a private location; whether the officer told the

person that he was free to leave; whether the police limited the person's movement via physical touching, restraint, or other coercive conduct; whether the officer informed the person that he was the target of an investigation; and whether the person was deprived of identification or other vital documents 'without which he could not leave.'" *Ahmad*, 21 F.4th at 479 (citing *United States v. Tyler*, 512 F.3d 405, 410 (7th Cir. 2008)). Other relevant factors include "'whether there was a threatening presence of several officers and a display of weapons and whether the officers' tone of voice was such that their requests would likely be obeyed.'" *United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015) (quoting *United States v. Johnson*, 680 F.3d 966, 975 n.4 (7th Cir. 2012)).

**B**

In this case, the encounter occurred in the McLean County courthouse, a public place, and lasted less than five minutes in total. (D. 36 at ECF p. 7). Plaintiff does not allege that he was ever deprived of any identification or other vital documents. As to physical contact, Harris does not dispute that Renken only had his hand on his arm for one second and suffered no physical injury from the touch. *Id.*; *see also* (D. 40 at ECF p. 2). As to whether the officers told him he was free to leave, Plaintiff states that he was told he was being detained. (D. 45 at ECF p. 4). However, as the video evidence from the courthouse belies, the officers followed him as he appeared to move freely throughout the courthouse—declining the officers' requests—from the lobby to the elevator, then the stairwell, and finally departing from the courthouse without issue after conducting his business. (D. 45-4). True, the officers appeared to have followed Plaintiff while asking him to identify himself pursuant to their duties of serving civil process; however, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Ahmad*, 21 F.4th at 478 (citing *Bostick*, 501 U.S. at 434). There is no genuine dispute that, at all times, Harris refused to provide his name to the officers or otherwise identify himself, and only after the officers contacted the Circuit Clerk's office were they able to determine that Harris

6

was not Anderson. (D. 36 at ECF p. 6-7); (D. 40 at ECF p. 15). There is also no allegation that the officers ever displayed their weapons and there is not any evidence of an overwhelming show of force given that there are only two named officers involved in the instant dispute.[4] Given this, the Court finds that there was no seizure of the Plaintiff because it does not appear that the Plaintiff's liberty was ever restrained. *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

However, even assuming there was a detention implicating the Plaintiff's Fourth Amendment rights as he maintains, it was reasonable and justified under the circumstances. The Plaintiff relies on a letter he received from the McLean County Sheriff's Department in response to his complaint dated July 29, 2022, regarding the incident at issue. (D. 40-1 at ECF p. 1). In that letter, Lt. Matthew Lane concludes, "Your claims are invalid due to the fact that they were investigating obstruction of process service at the time you were detained and questioned." *Id.* at ECF p. 2. Because it is undisputed in this case that no arrest was ever effectuated, the Court applies the well-established Fourth Amendment precedent that "law enforcement officers may engage in brief investigative stops that need not be supported by probable cause . . .." *United States v. Askew*, 403 F.3d 496, 507 (7th Cir. 2005) (citing *Terry v. Ohio*, 392 U.S. 1, 26 (1968)). Indeed, "a law enforcement officer may conduct a brief, non-intrusive detention of a person if the officer has specific and articulable facts to give rise to a reasonable suspicion that the person has committed or is committing a crime." *United States v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999). "A finding of reasonable suspicion supporting a *Terry* stop must be based on the totality of the circumstances presented to the officer at the time of the detention." *Askew*, 403 F.3d at 507 (citing *Scheets*, 188 F.3d at 837). That analysis "encompasses both 'the experience of the law enforcement agent and the behavior and characteristics of the suspect.'" *Id.* It must also be "'reasonably related in scope to the circumstances which justified the interference in

---

[4] Plaintiff asserts, without any authority, that "it doesn't take 2 deputes to serve a civil order". *See e.g.,* (D. 40 at ECF p. 3).

7

the first place.'" *Id.* (citing *United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995)). Such stops can even include the use of handcuffs, the placing of suspects in police cruisers, the drawing of weapons, and other measures "more traditionally associated with arrest than with investigatory detention." *Id.* (citing *United States v. Tilmon*, 19 F.3d 1221, 1224-25 (7th Cir. 1994)).

In this case, it is undisputed that Haynes and Renken were attempting to serve civil process, and the Court concludes that the officers had "reasonable suspicion to believe that Harris was obstructing service of process by refusing to identify himself" to the officers that were attempting to determine whether Harris was Anderson. Under Illinois law, "Whoever knowingly resists or obstructs the authorized service or execution of any civil or criminal process . . . commits a Class B misdemeanor." ILL. COMP. STAT. 720 § 5/31-3. In Illinois, while "'mere silence' in the face of requests [from the police] for identifying information . . . is not enough to constitute obstruction", "an exception exists, however, when an individual's silence prevents an officer from carrying out a duty imposed by court order and by statute." *Neuman v. Peoria Cty. Police Dep't*, 187 Fed. App'x 627, 630 (7th Cir. 2006) (internal citations omitted). In this case, the officers had a duty to determine that the person to be served was in fact Anderson, and the officers had a reasonable suspicion that Harris, who reasonably fit the description of Anderson, was obstructing their service. Furthermore, any stop of Harris by the officers was reasonably related to justify the interference. *Askew*, 403 F.3d at 507 (citing *Vega*, 72 F.3d at 515). The officers never brandished their weapons or used any physical force to restrain Harris' movement or liberty. Harris was never arrested or searched, and, at all times, appeared to move freely throughout the courthouse and left without incident after conducting his business despite never identifying himself to the officers. Finally, there is no question that the law authorizing the service of process in this case complies with the contours of the Fourth Amendment. The Supreme Court has observed, "A state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with the Fourth

Amendment prohibitions against unreasonable searches and seizures." *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cty.*, 542 U.S. 177, 188 (2004).

### IV

For the reasons set forth, *supra*, the Defendants' Motion for Summary Judgment, (D. 36), is GRANTED, and the Plaintiff's Motion for Summary Judgment, (D. 45), is DENIED. The Clerk is directed to enter judgment in favor of the Defendants and terminate the case.

*It is so ordered.*

Entered on May 19, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE